ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada  89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
*Email: mail@asmithlaw.com*

Attorney for Debtor

*ELECTRONICALLY FILED*
*August 15, 2011*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

In Re:

CAVIATA ATTACHED HOMES, LLC,
a Nevada limited liability company,

Debtor.

_____/

Case No. BK-N-11-52458-BTB
Chapter 11

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

Hearing Date: OST Pending
Hearing Time: OST Pending

Debtor, CAVIATA ATTACHED HOMES (the "Debtor"), by and through its counsel Alan R. Smith, Esq., of the Law Offices of Alan R. Smith, hereby applies to this Court for entry of an order authorizing the Debtor's use of cash collateral *nunc pro tunc*. This motion is based upon the Declaration of William D. Pennington, II, the following points and authorities, pleadings, papers and other records contained in this Court's file, judicial notice of which is respectfully requested, and any evidence or oral argument presented at the time of the hearing on this Motion.

///
///
///
///
///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd

# MEMORANDUM OF POINTS OF AUTHORITIES

**I. BACKGROUND FACTS**

1.  On August 1, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[1]

2.  Debtor plans to continue operating and managing its business as Debtor and Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.  The basis for the relief sought herein is Section 361 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(b) and LR 4001(b).

**II. JURISDICTION AND VENUE**

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

5.  The statutory basis for the relief sought herein are Sections 105, 363, 1107 and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and LR 4001(c).

6.  Venue of the Debtor's Chapter 11 case in this district is proper pursuant to 28 U.S.C. § 1408 and 1409.

**III. BACKGROUND**

7.  The Debtor owns and operates a 184 unit apartment complex located at 950 Henry Orr Parkway, Sparks, Nevada, 89436 (the "Property").

On September 20, 2005, the Debtor entered into a loan agreement, promissory note and deed of trust with California National Bank ("Cal National") for the principal sum of $40,700,000.00 for the construction of the Property. Debtor is informed and believes that Cal National was taken over by the Federal Deposit Insurance Corporation ("FDIC") on October 31, 2009, and its assets and liabilities were acquired by U.S. Bank.

---

[1] All references to "Chapter" and "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd      - 2 -

### IV. SUMMARY OF RELIEF SOUGHT

8.   The Debtor requests authority to use cash collateral generated by the Property pursuant to Bankruptcy Code Section 363. The Debtor seeks authority to pay certain obligations in operating and maintaining the Property. A budget for the Property is attached to the Declaration of William D. Pennington, II. The budget sets forth the monthly average for estimated revenue and expenses of the Debtor for the Property. The Debtor seeks authorization from this Court to deviate from the budget amounts for actual expenditures not to exceed 10% of the aggregate monthly budgeted amounts without further court approval.

Pending plan confirmation, the Debtor proposes to make adequate protection payments to U.S. Bank, the secured creditor for the Property, in the amount of $120,000.00 as set forth in Section V(B) below.

### V. LEGAL ARGUMENT

**A.   Applicable legal authorities.**

The purpose of Section 363(c)(1) of the Bankruptcy Code provides that a debtor-in-possession with the flexibility to engage in the ordinary course transactions necessary to operate their businesses without unnecessary oversight by their creditors or the court. *See* In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997); In re Enron Corp., 2003 WL 1562202, 15 (Bankr. S.D.N.Y. 2003). Included within the scope of Section 363(c)(1) of the Bankruptcy Code is a debtor-in-possession's ability to continue "routine transactions" required by such debtor's cash management system. See In re Amdura Corp., 75 F.3d 1447, 1453 (10th Cir. 1996).

Section 363 of the Bankruptcy Code provides that a debtor-in-possession may not use, sell or lease cash collateral unless: 1) each entity with an interest in such cash collateral consents; or 2) the court, after notice and hearing, authorizes the use, sale, or lease of such cash collateral in accordance with the provisions of Section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363(c)(2).

Section 363(a) of the Bankruptcy Code defines the term "cash collateral" as:

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd    - 3 -

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an *interest* and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (*emphasis added*).

By filing this motion Debtor does not conceded that U.S. Bank has an interest in its cash collateral. But if pursuant to Section 363(c)(2) of the Bankruptcy Code, an entity with an interest in cash collateral consents to that collateral's use, sale or lease – or the court, after notice and hearing, authorizes such use, sale, or lease – a debtor-in-possession may still be required to provide adequate protection to an entity with an interest in the cash collateral. Section 363(e) provides, in pertinent part , that "at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

The Debtor, as debtor-in-possession of the estate, has the duty to protect and conserve property in its possession for the benefit of creditors. In re Devers, 759 F.2d 751 (9th Cir. 1985). The exact nature of the duty owed by a debtor-in-possession of the estate was defined in In re Morning Star Ranch Resorts, 64 B. R. 818 (Bkrtcy. D. Colo. 1986):

> The debtor is a fiduciary and operates the property as a fiduciary for the parties in interest. He has obligations to operate the property in good fashion, to pay the expenses of operation and the cost of maintenance, to preserve and protect the property, and to account for the monies received and the expenses paid.

64 B.R. at 822. The Debtor herein has been operating the Property, paying the necessary operating and maintenance expenses and it proposes that, with the Court's permission, it be allowed to continue to do so.

Further, where a secured party is adequately protected under § 363, then the debtor

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd    - 4 -

1  may use the cash collateral for expenses, not only those directly related to the operation
2  and maintenance of the businesses, but also administrative expenses, because in that
3  situation, the secured party has no right to object.  In such situation where the secured
4  party is adequately protected, its security interest is not jeopardized by the payment of
5  such expenditures.  Travelers Ins. Co. v. River Oaks Ltd. Partnership (In re River Oaks
6  Ltd. Partnership), 166 B.R. 94, 97-98 (D. Mich. 1994).

7  It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral
8  for a reasonable period of time for the purpose of maintaining and operating its property.
9  11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. C.D. Cal.
10 1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir. BAP 1991). In addition,
11 where the debtor is operating a business, it is extremely important that the access to cash
12 collateral be allowed in order to facilitate the goal of reorganization: "the purpose of
13 Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to
14 operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr. D.N.H. 1993),
15 quoting In re Stein, 19 B.R. 458, 459.

16 **B.    U.S. Bank will be adequately protected.**

17 To the extent that an entity has a valid security interest in the revenues generated
18 by the Property, those revenues constitute "cash collateral" under Section 363(a) of the
19 Bankruptcy Code.  Pursuant to Section 363(c)(2), the Court may authorize the debtor to
20 use a secured creditor's cash collateral if the secured creditor is adequately protected.  In
21 re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984). *See also* In re O'Connor, 808 F.2d 1393,
22 1398 (10th Cir. 1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr. C.D.
23 Cal. l988) ("McCombs").

24 Pursuant to the Supreme Court case of United Savings Association v. Timbers of
25 Inwood Forest Assoc., 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law,
26 the property interest that a debtor must adequately protect pursuant to Sections 361(1) and
27 (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim.
28 108 S.Ct. at 630. *See also*, McCombs, *Id.* at 266.  Section 506(a) "limit[s] the secured

**Law Offices of**
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada  89501**
**(775) 786-4579**

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd    - 5 -

1  status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount
2  of the] claim or the value of the collateral." McCombs, *Id.* at 266.
3        The Debtor previously filed for protection under Chapter 11 of the Bankruptcy
4  Code on August 18, 2009 (Case No. 09-52788).  On April 10, 2010 the Debtor's Plan was
5  confirmed ("Original Plan").  The Plan provides for a monthly payment to U.S. Bank in
6  the amount of $120,000.00.  All payments required under the Plan are current as of this
7  filing.  Debtor proposes to continue to pay to U.S. Bank the amount established by the
8  Original Plan in the amount of $120,000.00 per month.  *See* Declaration of William D.
9  Pennington, II.
10       The Debtor does not have the ability to meet the ongoing post-petition obligations
11 with respect to maintaining and preserving the real property and paying the monthly
12 operating expenses unless they can have the immediate ability to use cash collateral to
13 pay the monthly expenses.  Accordingly, Debtor requests authorization to use the cash
14 collateral of the Lender in the form of rents received from Caviata to pay for the monthly
15 expenses, including management fees.
16       The monthly budget attached to the Declaration of William D. Pennington, II
17 allows the Debtor to effectively operate, preserve and maintain the Property and thereby
18 preserve and maximize the value of their assets for the estate and creditors, including U.S.
19 Bank.
20       The value of the Debtor's assets can only be maximized through continued leasing
21 of the Property.  Without the use of cash collateral, the Debtor's operations cannot
22 continue.  In addition, continued operations will protect and preserve the position of U.S.
23 Bank.  To further protect U.S. Bank, the Debtor proposes it will provide it with a
24 replacement lien against Debtor's post-petition rents, with such replacement lien to have
25 the same extent, validity and priority as pre-petition liens held by U.S. Bank.
26       The law is also clear that the preservation of the value of a secured creditor's lien
27 is sufficient to provide adequate protection to a secured creditor when a debtor seeks to
28 use cash collateral.  In re Triplett, 87 B.R. 25 (Bankr. W.D.Tex. 1988). *See also* In re

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd    - 6 -

Stein, 19 B.R. 458 (Bankr. E.D.Pa. 1982). In Stein, the Court found that, as a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral, and allowed the debtor therein to use cash collateral even though the secured party had no equity cushion for protection. The Stein Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. *See also* In re McCombs, *supra*, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral. Additionally, in determining adequate protection, courts have stressed the importance of promoting a debtor's reorganization. In In re O'Connor, Circuit stated:

> In this case, debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtor to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

808 F.2d at 1937. To continue operations, the Debtor must be permitted to use cash collateral. U.S. Bank's lien will be preserved because the Debtor has agreed that the Debtor will maintain the real property, collect rents, pay ongoing expenses and to pay the net income of the Property to U.S. Bank.

The Property cannot continue to be leased if this Debtor is not permitted to use cash collateral to pay its operating expenses. A shutdown and immediate liquidation of the Debtor's business, which would occur if this Debtor is not permitted to use cash collateral to pay its operating expenses, would harm the Debtor, its estate and its creditors. As described above, the Debtor should be permitted to operate and use cash

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd     - 7 -

collateral since C.W. Capital is adequately protected.

## VI.  Conclusion

The Debtor is a viable and operating entity, and believes that it will successfully reorganize and confirm a plan of reorganization. The continued operation of its businesses is in the overwhelming best interests of the Debtor's estate.  Wherefore, the Debtor requests that this Court enter an order: 1) granting the Motion in its entirety; 2) authorizing the Debtor to use cash collateral *nunc pro tunc* on the conditions set forth in this Motion; 3) approving the adequate protection payment of the net operating income from the Property to U.S. Bank; 4) granting a replacement lien in future rental income; and 5) grant such and other further relief as this Court deem just and proper.

DATED this 12th day of August, 2011.

LAW OFFICES OF ALAN R. SMITH

By: */s/ Alan R. Smith*
_____
Alan R. Smith, Esq.
Attorney for Debtor

**Law Offices of**
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada  89501**
**(775) 786-4579**

H:\Caviata\Cash Collateral\Mot Auth Use CC 081211-dlg.wpd

- 8 -