# * * § 362 INFORMATION COVER SHEET * *

Caviata Attached Homes LLC
**DEBTOR**

U.S. Bank National Association
**MOVANT**

Case No: 11-52458
CHAPTER: 11

MOTION #:

### Certification of Attempt to Resolve the Matter Without Court Action:

Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.

Date: 09/09/11   Signature: /s/ Joshua D. Wayser
Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: 950 Henry Orr Parkway, Sparks, Nevada 8948
NOTICE SERVED ON: Debtor(s) ✓ ; Debtor's counsel ✓ ; Trustee ✓ ;
DATE OF SERVICE: 09/09/2011

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st 28,885,236.77 | 1st 28,885,236.77 |
| 2nd 6,270,079.06 | 2nd 6,270,079.06 |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: 35,155,315.83 | Total Encumbrances: 35,155,315.83 |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |
| $20,900,000 (Appraisal) | $23,420,928 (Opinion) |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S): | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT: |
|---|---|
| Amount of Note: 29,564,308.77 | · none |
| Interest Rate: 4.25% | · |
| Duration: June 2013 | · |
| Payment per Month: variable | · |
| Date of Default: August 1, 2011 | · |
| Amount in Arrears: none | · |
| Date of Notice of Default: n/a | · |
| SPECIAL CIRCUMSTANCES: Debtor filed this case while its previous chapter 11 case was pending | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: [signature] | SUBMITTED BY: |
| | SIGNATURE: |

LAW OFFICES OF AMY N. TIRRE  
A Professional Corporation  
AMY N. TIRRE, ESQ. #6523  
3715 Lakeside Drive, Suite A  
Reno, NV 89509  
(775) 828-0909 Telephone  
(775) 828-0914 Facsimile  
Email: amy@amytirrelaw.com  

Katten Muchin Rosenman LLP  
Joshua D. Wayser, Esq. (CA SBN: 152711)  
2029 Century Park East  
Los Angeles, California 90067  
(310) 788-4400 Telephone  
(310) 788-4471 Facsimile  
Email: joshua.wayser@kattenlaw.com  

Attorneys for Senior Lender  
U.S. Bank National Association, a national banking association,  
as successor-in-interest to the Federal Deposit Insurance Corporation,  
receiver for California National Bank

Electronically Filed on September 9, 2011

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CAVIATA ATTACHED HOMES, LLC,<br><br>Debtor. | Case No. 11-52458<br><br>Chapter 11<br><br>**MOTION FOR RELIEF FROM STAY OR, IN THE ALTERNATIVE, TO DISMISS CHAPTER 11 CASE**<br><br>Hearing Date: October 7, 2011<br>Hearing Time: 2:00 p.m. |

U.S. Bank National Association, a national banking association, as successor-in-interest to the Federal Deposit Insurance Corporation, receiver for California National Bank ("Senior Lender"), by and through its attorneys, hereby files this motion for relief from the automatic stay pursuant to

11 U.S.C. §§ 362(d)(1) and (d)(2) and Federal Rules of Bankruptcy Procedure 4001 and 9014 or, in the alternative, to dismiss this chapter 11 case (this "Motion") and states as follows in support thereof:

## INTRODUCTION

This is the second chapter 11 case filed by Caviata Attached Homes, LLC ("Debtor") in the last two years and comes just seven (7) months after the order approving Debtor's chapter 11 plan became a final order. Debtor's first chapter 11 case (Case No. 09-52786) was never closed and remains pending before this Court.[1] This second filing is an improper and backdoor attempt by Debtor to circumvent the Bankruptcy Code's prohibition on modifying a substantially consummated plan. Moreover, as admitted by Debtor, Senior Lender's collateral has deteriorated in value since Debtor's first chapter 11 bankruptcy case and continues to deteriorate. Debtor is not adequately protecting Senior Lender's interests.

Cause exists to grant Senior Lender relief from the automatic stay as a result of Debtor's impermissible successive chapter 11 filing scheme to circumvent the requirements under the Bankruptcy Code. Senior Lender has been prevented from foreclosing on its collateral for the last two years while Debtor has permitted the collateral to deteriorate in value and has not made any progress in alleviating its financial struggles. Cause also exists to grant Senior Lender relief from the automatic stay because (i) Senior Lender's interest in its collateral is not adequately protected and (ii) Debtor does not have any equity in such property and such property is not necessary to an effective reorganization. While given plenty of opportunities to reorganize, Debtor has simply failed to do so and in the meantime Senior Lender has been forced to suffer the consequences of Debtor's failed business. Debtor's games should not be condoned and Senior Lender should be granted relief from the automatic stay or, in the alternative, this second chapter 11 case should be dismissed.

---

[1] Despite the requirements for filing a notice of related cases under LBR 1015, Debtor failed to notify this Court of its second filing.

2

MOTION FOR STAY RELIEF OR, IN THE ALTERNATIVE TO DISMISS CASE

# BACKGROUND

**I.  Senior Lender's Loan to Debtor.**

On or about September 20, 2005, Senior Lender loaned Debtor the principal sum of $40,700,000.00 (the "Loan") on a recourse basis, secured by the real property commonly known as and located at 950 Henry Orr Parkway, Sparks, Nevada 89439 (the "Property").  The Loan was memorialized in a Construction Loan Agreement (the "Loan Agreement"), Promissory Note (the "Note") and Deed of Trust (the "Deed" and together with the Loan Agreement, the Note and all other documents evidencing the Loan, the "Loan Documents") all dated September 20, 2005.  True and correct copies of the Loan Agreement, the Note and the Deed are attached to the Declaration of Richard Concannon filed concurrently herewith (the "Concannon Declaration") as Exhibits A, B, and C, respectively, and incorporated herein by this reference.  The Deed assigns Debtor's right, title and interest in the Property, including all rents, income and profits from the Property, to Senior Lender and was recorded on September 30, 2005 in the Official Records of Washoe County, State of Nevada as Document No. 3285509.

Debtor defaulted on its obligations under the Loan and on or about April 25, 2007, Debtor and Senior Lender entered into a Forbearance Agreement (the "Forbearance Agreement") whereby Senior Lender agreed to forbear from exercising its rights under the Loan Documents until September 20, 2007.  The Forbearance Agreement was thereafter amended six times, with the most recent amendment dated January 15, 2009.  True and correct copies of the Forbearance Agreement and six amendments thereto are attached to the Concannon Declaration as Group Exhibit D and incorporated herein by this reference.   In connection with the sixth amendment to the Forbearance Agreement, Senior Lender and Debtor executed an "Amended and Restated Secured Promissory Note" (the "Amended Note").  A true and correct copy of the Amended Note is attached to the Concannon Declaration as Exhibit E and incorporated herein by this reference.  By the terms of the Amended Note, Debtor agreed to pay to Senior Lender the remaining principal balance under the

3

Note of $27,476,632.88 plus interest no later than April 15, 2009. Debtor failed to pay the Loan and, on or about April 24, 2009, Senior Lender filed a Verified Complaint for (1) Judicial Foreclosure; (2) Appointment of Receiver; (3) Specific Performance; (4) Injunctive Relief; (5) Breach of Guaranty; and (6) Money Due (the "Complaint") with the Second Judicial District Court of the State of Nevada in and for the County of Washoe (the "State Court").

On October 30, 2009, the Federal Deposit Insurance Corporation closed California National Bank ("Cal National") and the assets of Cal National were assigned to Senior Lender. True and correct copies of the Allonge to the Note, Assignment of the Deed and Loan Agreement are attached to the Concannon Declaration as Exhibits F, G and H, respectively, and incorporated herein by this reference.

## II.     Debtor's First Bankruptcy Case (Case No. 09-52786).

Following Debtor's default under the Loan Agreement, Debtor filed for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code")[2] on August 18, 2009 (the "First Petition Date"), Case No. 09-52786 (the "First Bankruptcy Case"). The First Bankruptcy Case was initially assigned to Judge Zive and subsequently assigned to Judge Peterson, sitting by designation. As of the First Petition Date, Senior Lender was owed $29,564,308.77, as reflected in its proof of claim filed therein [Claim No. 1] (the "Claim"). A true and correct copy of the Claim is attached as Exhibit A to the Declaration of Joshua D. Wayser filed herewith (the "Wayser Declaration") and incorporated herein by this reference. Senior Lender obtained an appraisal of the Property shortly before the First Petition Date. The appraiser determined the value of the Property to be $23,100,000 at that time. *See* Declaration of William Kimmel attached as Exhibit B to the Wayser Declaration and incorporated herein by this reference.

---

[2] All statutory references herein shall be to the Bankruptcy Code unless otherwise so stated.

4

MOTION FOR STAY RELIEF OR, IN THE ALTERNATIVE TO DISMISS CASE

**A. Debtor's First Chapter 11 Plan.**

On November 16, 2009, Debtor filed its Chapter 11 Plan of Reorganization (the "Plan") and Disclosure Statement. True and correct copies of the Plan and Disclosure Statement are attached to the Wayser Declaration as Exhibits C and D, respectively, and incorporated herein by this reference. Pursuant to the Plan, Debtor proposed to pay Senior Lender interest at a rate of 4.25% on the principal amount of the Loan, amounting to approximately $120,500.53 per month for three years. Plan 6:15-25. After the three years, Debtor committed to sell the Property or refinance the Loan to pay Senior Lender in full. *Id*. 9:22-10:23. The Plan provides that upon any default by Debtor under the Plan, Senior Lender shall be entitled to "enforce all of the terms of [the Deed] and [the Note], in addition to all rights available under Nevada law, including, without limitation, foreclosure upon the Property and the opportunity to credit bid the entire amount of [the Note] at any foreclosure sale." *Id*. 7:7-12.

Senior Lender filed objections to Debtor's Disclosure Statement and Plan because, *inter alia*, the Plan was not feasible. True and correct copies of Senior Lender's objections to Debtor's Plan and Disclosure Statement are attached to the Wayser Declaration as Exhibits E, F and G and incorporated herein by this reference. At the time it filed the Plan, Debtor had only been able to service Senior Lender at an amount above the proposed adequate protection payments once in the previous seven months. *See* Disclosure Statement at Exhibit C. It was clear to Senior Lender that Debtor simply sought to saddle Senior Lender will all of the risk while hoping the market turned around and enabled Debtor to sell or refinance the Property. The Court ultimately overruled Senior Lender's objections to the Plan and entered a Memorandum Decision, Findings of Facts and Conclusions of Law and Order confirming the Plan on April 12, 2010. True and correct copies of the Memorandum Decision, Findings of Facts and Conclusions of Law and Order Confirming the Plan are attached as Exhibits H, I, and J, respectively, to the Wayser Declaration and incorporated herein by this reference.

### III. Senior Lender's Appeal.

Senior Lender appealed the confirmation order on several grounds, including the Court's finding that the Plan was feasible. Statement of Issues on Appeal 2:7-8 attached as Exhibit K to the Wayser Declaration and incorporated herein by this reference.

While Senior Lender's appeal was pending, Debtor filed an objection to Senior Lender's Claim. Claim Objection attached as Exhibit L to the Wayser Declaration and incorporated herein by this reference. Senior Lender and Debtor eventually entered into a stipulation resolving the appeal and claim objection and agreed that Senior Lender would have an allowed claim of $29,564,308.77 against Debtor (the "Allowed Claim"). *See* Stipulation Regarding Senior Lender's Claim Amount, attached as Exhibits M to the Wayser Declaration and incorporated herein by this reference.

### IV. Debtor's Performance Under the Plan.

Debtor began making payments under the Plan to Senior Lender in June 2010 and, to date, has made monthly payments to Senior Lender in the amount of $120,500.53 per month. Debtor currently owes Senior Lender approximately $28,885,000 on Senior Lender's Allowed Claim. *See* Debtor's Schedules [Second Bankruptcy Case, Doc. No. 34] Debtor has not reported to the Court whether payments have been made under the Plan to creditors other than Senior Lender. In its most recent quarterly report in the First Bankruptcy Case, filed on April 25, 2011, Debtor certified that it did not "anticipate a circumstance/event which [would] cause an interruption or cessation of payments or other performance under the Plan." A true and correct copy of Debtor's Quarterly Report is attached to the Wayser Declaration as Exhibit N and incorporated herein by this reference. Debtor's First Bankruptcy Case remains pending at this time.

### V. Debtor's Second Bankruptcy Case (Case No. 11-52458).

Despite Debtor's April 2011 representations to the Court, on August 1, 2011 (the "Second Petition Date"), less than two years since the First Petition Date, Debtor filed this second chapter 11 bankruptcy case, Case No. 11-52458 (this "Second Bankruptcy Case"). Debtor filed its Schedules

and Statement of Financial Affairs on August 23, 2011. The filings confirm that Debtor has no new creditors or debts since the First Bankruptcy Case.

**VI.    The Property Has Decreased In Value.**

Shortly after the Second Petition Date, Senior Lender obtained an updated appraisal of the Property. *See* Appraisal attached as <u>Exhibit A</u> to Declaration of Scott Beebe (the "<u>Beebe Declaration</u>"). The updated appraisal reflects that the value of the Property has decreased since the First Petition Date to a value of $20,900,000, a decrease of almost $3 million. Debtor itself admits that even without obtaining a professional appraisal, it believes the Property has decreased in value. In its schedules filed on August 23, 2011, Debtor indicated that the Property has decreased to a value of $23,420,928 as of the Second Petition Date *See* Debtor's Schedule A [Doc. No. 34]. In its Schedules, Debtor admits this value is just an estimation with no evidentiary support and while Debtor intends to obtain an appraisal of its own, to date, no such appraisal has been offered to the Court. In addition, Debtor's representative was unable to attend the 341 meeting of creditors scheduled for August 29, 2011 due to illness and therefore Senior Lender was unable to determine the details of Debtor's anticipated appraisal or reasons for filing this Second Bankruptcy Case. Debtor's 341 meeting has been rescheduled to September 12, 2011.

Nevertheless, the numbers are clear – the Property has decreased in value since the First Bankruptcy Case and it will likely continue to decrease in value. As found by Senior Lender's appraiser:

> The downturn in the housing market has increased the pool of potential renters within the region, however the "shadow" rental market as well as condominium reversions has continued to impact the region's apartment market. In the short term rental rates are expected to continue to remain stagnant, and vacancy is expected to stabilize near 7-10 percent. Market wide concessions will remain prevalent through the remainder of 2011. Investment activity in the Reno region is expected to remain low in 2011 as the troubles within the capital markets have made financing increasingly difficult to obtain as well as the disconnect between the returns investors currently require and what property owners are willing to sell at.

Appraisal at 25.  The Property is simply not going to regain its value and Senior Lender continues to bear all of the risk while Debtor attempts to hold on to the Property, bear no risk and reap all of the benefits.  Debtor's game should not be condoned and Senior Lender should be granted relief from the automatic stay or, in the alternative the Second Bankruptcy Case should be dismissed.

## ARGUMENT

### I. Cause Exists To Grant Senior Lender Relief From the Automatic Stay Or, In The Alternative To Dismiss the Second Bankruptcy Case.

Under § 1141(a), the terms of a confirmed plan bind a debtor.  Section 1127 prohibits a modification of a confirmed chapter 11 plan after the plan has been substantially consummated.  11 U.S.C. § 1127(b).  Courts do not permit a debtor to avoid the binding effect of § 1141 by filing a second chapter 11 bankruptcy petition to achieve a modification that would be prohibited under § 1127; the terms of a confirmed plan are binding on the parties and should be given *res judicata* effect.  *See, e.g.*, *In re Adams*, 218 B.R. 597, 600 (Bankr. D. Kan. 1998); *In re Tillotson*, 266 B.R. 565, 568 (Bankr. W.D.N.Y. 2001); *In re Motel Props.*, 314 B.R. 889, 895 (Bankr. S.D. Ga. 2004) (citing *Sec. Pac. Credit Corp. v. Savannah, Ltd. (In re Savannah, Ltd.)*, 162 B.R. 912, 915 (Bankr. S.D. Ga. 1993)); *In re Woods*, Case No. 10-12397, 2011 WL 841270 *4 (Bankr. D. Kan. Mar. 7, 2011); *In re Nordyke Ventures, LLC*, Case No. 10-13332 (Bankr. D. Kan. Mar. 2, 2011); *In re Advantage Props., Inc.*, Case No. 06-12363-11, 2007 WL 809510 (Bankr. D. Kan. Mar. 14, 2007). "Once its confirmed plan is substantially consummated, the debtor should not be able to circumvent or evade its binding responsibilities by filing what is in effect a modified plan." *Tillotson*, 266 B.R. at 569, *Woods*, 2011 WL 841270 *4, *Nordyke Ventures*, 2011 WL 808193 *4, *Advantage Props.*, 2007 WL 809510 *4.  Parties should be able to rely on the finality of the terms of a plan.  *Tillotson*, 266 B.R. at 569, *Woods*, 2011 WL 8411270 *4, *Nordyke Ventures*, 2011 WL 808193 *4, *Advantage Props.*, 2007 WL 809510 *4.

Some courts have created a limited good faith exception to this bar. *Tillotson*, 266 B.R. at 569, *Woods*, 2011 WL 8411270 *4, *Nordyke Ventures*, 2011 WL 808193 *4, *Advantage Props.*, 2007 WL 809510 *4, *Lincoln Nat'l Life Ins. Co. v. Bouy, Hall & Howard (In re Bouy, Hall & Howard)*, 208 B.R. 737, 743 (Bankr. S.D. Ga. 1995). A debtor's "good faith" is demonstrated by a genuine need for a new chapter 11 case and objective good faith of the debtor by filing the new chapter 11 case. *Tillotson*, 266 B.R. at 569, *Woods*, 2011 WL 8411270 *4, *Nordyke Ventures*, 2011 WL 808193 *4, *Advantage Props.*, 2007 WL 809510 *4.

### A. Debtor Does Not Have A Genuine Need For This Second Bankruptcy Case.

A debtor's genuine need is established by an extraordinary change in circumstances after substantial consummation of the debtor's prior plan that substantially impairs a debtor's performance under the prior plan. *Tillotson*, 266 B.R. at 569, *Woods*, 2011 WL 8411270 *4, *Nordyke Ventures*, 2011 WL 808193 *4, *Advantage Props.*, 2007 WL 809510 *4. Circumstances justifying a second chapter 11 filing, must truly be "extraordinary." *See, e.g.*, *In re Woodson*, 213 B.R. 404 (Bankr. M.D. Fla. 1997) (finding extraordinary circumstances when a debtor's crop of tomatoes was destroyed in a hail storm and a creditor was on the verge of recording a substantial judgment against the debtor); *In re Adams*, 218 B.R. 597 (Bankr. D. Kan. 1998) (finding extraordinary circumstances when a fire burned 3,000 acres of the debtor's 8,000 acre ranch, destroyed part of the debtor's cow herd and crops and required debtor to repair fences, outbuildings, replace equipment and cattle feed – all of which substantially impaired his performance under the plan); *CFC 78 P'ship B. v. Casa Loma Assocs. (In re Casa Loma Assocs.)*, 122 B.R. 814, 818-19 (Bankr. N.D.Ga. 1991) (finding extraordinary circumstances when debtor discovered fire damage and structural defects in its apartment complex that necessitated substantial expenditures to repair and a new federal law required debtor to accept children as tenants, which resulted in increased vacancies in what had previously been an all adult complex); *Advantage Props.*, 2007 WL 809510 *4 (finding

9

MOTION FOR STAY RELIEF OR, IN THE ALTERNATIVE TO DISMISS CASE

extraordinary circumstances did not exist as a result of a small fire in one of the debtor's rental spaces or because management of the debtor had been ineffective).

"Extraordinary circumstances" do not include decreased income, increased expenses, changes in the debtor's operations, the market or the economy. *Tillotson*, 266 B.R. at 569 (stating that "there appears to be no dispute among the courts regarding the above statement of the applicable law.") (citing *In re Adams*, 219 B.R. 597, 600-602 (Bankr. D. Kan. 1998) (finding that a drop in oil prices should have been anticipated and does not justify a new chapter 11 case). One of the foreseeable risks of operating any business is the fluctuation in supply and demand and its impact on the market; for that reason, changed market conditions alone are not sufficiently changed circumstances to warrant a second filing. *Motel Props.*, 314 B.R. at 896. In *Motel Properties*, the court rejected the debtor's claims that the general decline in the economy and the length of the recession justified the second filing. *Id.* at 897. The court found that general market fluctuations in an industry dependent upon the discretionary spending of its consumer base were insufficient to justify a second chapter 11 case. *Id.*

In sum and as aptly put by the *Adams* court:

> Because the debtor should generally be bound by the terms of the confirmed plan and live with the benefits and burdens of its bargain, only changes that were unanticipated and not reasonably foreseeable at the time of confirmation or substantial consummation can justify the filing of a new reorganization plan. If the debtor's income decreases or expenses increase because of ordinary and foreseeable changes in the debtor's operations, or in the market, that does not constitute a sufficient change in circumstances. The occurrence of ordinary, foreseeable risks of doing business should not relieve the debtor of the terms of its confirmed plan.

*Adams*, 219 B.R. at 600-602, *see also*, *Tillotson*, 266 B.R. at 569 (citing the Adams court's summary).

Debtor has not provided any explanation for this Second Bankruptcy Case. In fact, just a few months ago, Debtor reported to this Court that it did not foresee any circumstances that would affect this First Bankruptcy Case. As a result, Debtor has failed to and cannot establish extraordinary

10

circumstances justifying the Second Bankruptcy Case. Debtor has defaulted on its Plan by filing this Second Bankruptcy Case and Senior Lender is entitled to foreclose on its collateral, including the Property, pursuant to the Plan. As a result, Senior Lender should be granted relief from the automatic stay to exercise its rights with respect to its collateral. Alternatively, this Court should dismiss this Second Bankruptcy Case and require Debtor to abide by the terms of the Plan.

### B. Debtor Filed The Second Bankruptcy Case In Bad Faith.

While a finding of "extraordinary circumstances" is necessary to a showing of good faith to permit a successive chapter 11 filing, "an extraordinary change of circumstances is not, of itself, 'sufficient' to constitute such good faith." *Tillotson*, 266 B.R. at 570. Courts must also consider the facts and circumstances of each case to determine good faith. *Id.* (holding that "good faith is a requirement of every Chapter 11 case under 11 U.S.C. § 1129(a)(3) [and so the debtor] bears the burden to impress upon [the court] that reorganization is appropriate considering the facts and circumstances of this case"); *see also*, *Bouy*, 208 B.R. at 743. In determining the facts and circumstances of each case,

> This court's inquiry must begin with an analysis of the similarities and distinctions of the two cases in light of U.S.C. § 1141(a) .... [T]he salient question is whether the subsequent Chapter 11 case *is so related in time or in substance to the earlier case that it represents a collateral attack on the initial order of confirmation [.] If so, traditional notions of res judicata* are violated and the result is a bad faith filing. If not, and if the filing otherwise evidences good faith requirements of Chapter 11, then the debtor may proceed.

*Tillotson*, 266 B.R. at 570-71 (citing *In re Bouy*, 208 B.R. at 744) (emphasis in original), *see also*, *Motel Props.*, 314 B.R. at 895 (quoting the *Bouy* court's statement). In *Bouy*, the court developed the following factors to consider when evaluating a successive chapter 11 filing:

(i) the length of time between the two cases;

(ii) the foreseeability and substantiality of events which ultimately caused the subsequent filing;

(iii) whether the new plan contemplates liquidation or reorganization;

(iv) the degree to which creditors consent to the filing of the subsequent reorganization;

(v) the extent to which an objecting creditor's rights were modified in the initial reorganization and its treatment in the subsequent case.

*Bouy*, 208 B.R. at 744.

In this case, consideration of the factors demonstrates that Debtor has filed this Second Bankruptcy Case in bad faith. This Second Bankruptcy Case was filed just seven months after the order approving the Plan became a final order and within two years of the First Petition Date. Debtor has not demonstrated any events causing its subsequent filing and has not yet filed a new plan. Senior Lender, Debtor's largest creditor, strongly objects to this Second Bankruptcy Case and requests this Court grant it relief from the automatic stay to exercise its rights with respect to the Property or, in the alternative, dismiss this Second Bankruptcy Case. In sum, this Second Bankruptcy Case is so related in time and substance to the First Bankruptcy Case that it represents a collateral attack on the initial order of confirmation and the traditional notions of *res judicata* are clearly violated. As a result, this Court can only conclude that this was a bad faith filing.

Debtor's good faith is a question of objective good faith, not a subjective one. *Tillotson*, 266 B.R. at 570-71; *Motel Props.*, 314 B.R. at 896 (finding the good faith standard is an objective one and therefore the court need not give dispositive weight to the testimony of the subjective state of mind of the debtor's management); *Bouy*, 208 B.R. at 743. For example, in *Tillotson*, the debtor clearly demonstrated subjective good faith in filing his successive chapter 11 case because he was trying to save what had been his family's farm for over 100 years and had suffered as a result of the fire destroying a third of his ranch. *Tillotson*, 266 B.R. at 570-71. However, the court found that the debtor did not meet the objective good faith test because he was trying to escape his obligations under the prior plan and to saddle his lender with all of the losses that had occurred since the previous filing. *Tillotson*, 266 B.R. at 571.

In coming to this conclusion, the *Tillotson* court analyzed the debtor's objective good faith in the form of "fundamental fairness." *Tillotson*, 266 B.R. at 571. The court found that it was not fundamentally fair to allow the bank's collateral to deteriorate in value while in the possession of the debtor in chapter 11 and then allow the debtor to file a new chapter 11 plan to further stall the bank from foreclosing on its collateral. *Tillotson*, 266 B.R. at 571. The court found that the successive filing was so related in time and in substance to the earlier case that it represented a collateral attack on the initial order of confirmation. *Tillotson*, 266 B.R. at 571-72.

Just like in *Tillotson*, Debtor in this case cannot demonstrate objective good faith. Debtor is clearly trying to evade the requirements of chapter 11 by filing this Second Bankruptcy Case as a collateral attack on the Plan confirmed in the First Bankruptcy Case. Debtor has not identified any circumstances leading to this Second Bankruptcy Case, let alone extraordinary circumstances. Moreover, the value of the Property has declined and continues to decline while in Debtor's possession. Senior Lender should not be further stalled from foreclosing on its collateral. As a result, Senior Lender requests this Court to grant it relief from the automatic stay to exercise it rights with respect to its collateral, or, in the alternative to dismiss this Second Bankruptcy Case.

**II.    Relief From Stay Is Also Warranted Because Senior Lender Is Not Adequately Protected.**

If this Court declines Senior Lender's request for relief from the automatic stay for cause based upon Debtor's successive chapter 11 filing, Senior Lender alternatively requests relief from the automatic stay for cause because its interests are not adequately protected. Section 362(d)(1) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

"Adequate protection" is defined in section 361 of the Bankruptcy Code as requiring some form of remuneration to a secured creditor "to the extent that the stay under section 362 of this title .

. . results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361. *See also* 11 U.S.C. § 363(e); *In re Martin*, 761 F.2d 472, 475-76 (8th Cir. 1985); *Williams v. IMC Mortg. Co. (In re Williams)*, 246 B.R. 591, 596 (8th Cir. B.A.P. 1999). Debtor is required to adequately protect Senior Lender against any diminution in the value of its interest in the Property. *United Sav. Assoc'n of Texas v. Timbers of Inwood Forrest Assoc'n Ltd.*, 108 S.Ct. 266 (1988).[3]

Senior Lender has been barred by the automatic stay from protecting its collateral for the last two years. During that time, the value of its collateral has decreased by almost $3 million and continues to deteriorate. As a result, Senior Lender is entitled to adequate protection.

Section 361 of the Bankruptcy Code sets forth three non-exclusive examples of what may constitute adequate protection: (i) periodic cash payments equivalent to decrease in value, (ii) an additional or replacement lien on other property, or (iii) other relief that provides the indubitable equivalent. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984). Despite the diminished value of the Property, Debtor has not offered Senior Lender any of these protections. And while a sufficient equity cushion may also provide adequate protection, Debtor has no equity in the Property. Senior Lender's Allowed Claim of $29,564,308.77 substantially exceeds the $20,900,000 value of the Property.

The burden of proving adequate protection is on Debtor. 11 U.S.C. §§ 362(g) and 363(o). If Debtor cannot demonstrate that Senior Lender is adequately protected, relief from stay is mandatory. 11 U.S.C. § 362(d)(1). In this case, Debtor cannot demonstrate that Senior Lender is adequately protected. Senior Lender is grossly undersecured by almost $9 million (Senior Lender's Claim $29,554,308.77 - $20,900,000), the value of the Property has already decreased by over $3 million and continues to decrease. Therefore, cause exists to immediately modify the automatic stay

---

[3] "The concept of adequate protection is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain . . . . Though the creditor might not receive his bargain in kind, the purpose of this section is to insure that the secured creditor receives in value essentially what he bargained for." *In re Phoenix Steel Corp.*, 39 B.R. 218, 224-25 (D. Del. 1984).

pursuant to section 362(d)(1) of the Bankruptcy Code to allow Senior Lender to exercise its rights and remedies under applicable non-bankruptcy law against its collateral, including the Property.

### III. Relief From Stay Is Also Warranted Because Debtor Has No Equity In The Property And There Is No Hope For A Successful Reorganization Within A Reasonable Amount Of Time.

Section 362(d)(2) also requires relief from the stay with respect to property if (i) Debtor does not have any equity in such property and (ii) such property is not necessary to an effective reorganization. The facts in this case dictate stay relief for Senior Lender under § 362(d)(2) because Debtor does not have equity in the Property and the Property is not necessary to an effective reorganization.

"Equity" for purposes of § 362(d)(2) is the total amount of all liens encumbering the property (whether senior or junior) subtracted from the fair market value of the property. *See Stewart v, Gurley*, 745 F. 2d 1194, 1195 (9th Cir. 1984); *In re Tri-Growth Centre City, Ltd.,* 136 B.R. 848, 850 (Bankr. S.D. Cal 1992); and *In re Teresi*, 134 B.R. 392, 395 (Bankr. E.D. Cal 1991). As mentioned above, Debtor does not have any equity in the Property. Senior Lender's Allowed Claim alone exceeds $28,885,000 whereas the value of the Property is only $20,900,000. There can be no dispute that Senior Lender is grossly undersecured.

As demonstrated by the failure of Debtor's First Bankruptcy Case, Debtor has no reasonable possibility of an effective reorganization. In order to prove that property is necessary to an effective reorganization, Debtor must "make some showing that a [successful] reorganization is possible" within a reasonable time. *Id.* Importantly, "it is not necessary to wait until a plan of reorganization has been developed to determine whether a Chapter 11 plan is feasible or subject to confirmation." *Stage I Land Co. v. United States H.U.D. Dept.*, 71 B.R. 225, 230 (D. Minn. 1986). Debtors are obliged to make a showing that rehabilitation is reasonably likely and that successful reorganization is possible within a reasonable time. *In re Grand Sport, Inc.*, 86 B.R. 971, 975 (Bankr. N.D. Ind. 1988). "At a minimum, the debtor must provide the Court with a broad outline of how it intends to

employ the rehabilitative mechanisms of the Code to effectuate a reorganization within a reasonable amount of time." *In re Nattchase Assos. Ltd. P'ship*, 178 B.R. 409, 418 (Bankr. E.D. Va. 1994). "[A] reasonable possibility for reorganization cannot be grounded solely on speculation, and a 'mere financial pipedream' is insufficient." *Id.* (quoting *In re L&M Props., Inc.*, 102 B.R. 481, 484 (Bankr. E.D. Va. 1989)). "[T]he Debtor must persuade the Court that the operation of the business will generate sufficient income to pay debt service." *Id.*

A mere speculation of rehabilitation and eventual reorganization is not enough; Debtor must provide concrete, objective facts of the likelihood of rehabilitation and that a successful reorganization is in prospect. *See, e.g., In re Danny Thomas Props. II Ltd. P'ship*, 241 F.3d 959 (8th Cir. 2001) (holding that a chapter 11 plan was not feasible because the debtor's projections were mere speculation, and the debtor's post-petition financials indicated that it would operate at a loss throughout the life of the plan). As the *Grand Sport* bankruptcy court opined:

> Consequently, a debtor must do more than merely assert that it can reorganize if only given the opportunity to do so. These assertions must have some foundation based on objective fact. This is especially so when the creditor presents evidence which casts substantial doubt on the possibility that the debtor may be able to reorganize. Confronted with such evidence, the debtor must, at a minimum, provide some kind of map which charts a path through Chapter 11 to a successful reorganization.

86 B.R. at 975 (quoting *In re Anderson Oaks Ltd. P'ship*, 77 B.R. 108, 110 (Bankr. W.D. Tex. 1987) ("The court should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the likelihood of an effective reorganization.")).

Debtor has experienced financial difficulties for at least the last four years. Senior Lender entered into its first forbearance agreement with Debtor in April 2007. After six amendments to the forbearance agreement, Debtor filed the First Bankruptcy Case. From the beginning of Debtor's First Bankruptcy Case, Senior Lender objected to Debtor's proposed plans for reorganization because they were not feasible. From its dealings with Debtor, Senior Lender was well aware of Debtor's financial struggles and past performance. During the First Bankruptcy Case, Debtor

consistently failed to meets its financial projections, including during the months leading up to the confirmation hearing. Senior Lender further pointed out that even if the value of the Property in the next several years is as much as Debtor predicted, it would still not be enough to pay Senior Lender in full, let alone Debtor's other secured creditors. Yet, despite Debtor's glaring financial difficulties, the Court confirmed the Plan over Senior Lender's objections. In the end, the validity of Senior Lender's objections were confirmed by the failure of Debtor's First Bankruptcy Case. Debtor's financial condition has not improved; in fact, it has only deteriorated as evidenced by the filing of the Second Bankruptcy Case and the diminished value of the Property. At this juncture, there are simply no facts from which this Court could conclude that there is a reasonable possibility of rehabilitation of Debtor within a reasonable period of time. Indeed, all facts militate against such a finding, including the severely depressed real estate market, tightening credit and Debtor's dismal financial status and default under the Plan.

## CONCLUSION

Cause exists to grant Senior Lender relief from the automatic stay as a result of Debtor's impermissible successive chapter 11 scheme to circumvent the requirements under the Bankruptcy Code. Senior Lender has been prevented from foreclosing on its collateral for the last two years while Debtor has permitted the collateral to deteriorate in value and has not made any progress in alleviating its financial struggles. Cause also exists to grant Senior Lender relief from the automatic stay because (i) Senior Lender's interest in its collateral is not adequately protected and (ii) Debtor does not have an equity in such property and such property is not necessary to an effective reorganization. While given plenty of opportunities to reorganize, Debtor has simply failed to do so and in the meantime Senior Lender has been forced to suffer the consequences of Debtor's failed business. Debtor's schemes should not be condoned and Senior Lender should be granted relief from the automatic stay.

WHEREFORE, the Senior Lender respectfully requests that this Court grant Senior Lender relief from the automatic stay to exercise its rights in the Property or, in the alternative, dismiss the Second Bankruptcy Case and grant it such other relief it deems necessary and just.

Dated: September 9, 2011                                    U.S. BANK NATIONAL ASSOCIATION

By: ___/s/ Amy N. Tirre_____
Amy N. Tirre, Esq. #6523
Law Offices of Amy N. Tirre, PC
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
Email: amy@amytirrelaw.com

- And-

Katten Muchin Rosenman LLP
Joshua D. Wayser, Esq. (CA SBN: 152711)
2029 Century Park East
Los Angeles, California 90067
(310) 788-4400 Telephone
(310) 788-4471 Facsimile
Email: joshua.wayser@kattenlaw.com
*Attorneys for the Senior Lender*